Thomas H. Schelly, Esq. — SBN 217285
Kevin A. Lipeles, Esq. — SBN 244275
**LIPELES LAW GROUP, APC**
880 Apollo St., Suite 336
El Segundo, California 90245
Telephone: (310) 322-2211
Facsimile (310) 322-2252

Attorneys for Plaintiffs
JAMIE LIPELES, and all
others similarly situated throughout
the United States and its territories

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DISTRICT

| | |
|---|---|
| JAMIE LIPELES, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>FCA US LLC, and DOES 1 through 100, inclusive,<br><br>                Defendants. | CASE NO. CV 21-948-JFW(JEMx)<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. NEGLIGENCE;<br>2. STRICT LIABILITY;<br>3. BREACH OF EXPRESS WARRANTY;<br>4. BREACH OF IMPLIED WARRANTY; and<br>5. UNFAIR COMPETITION<br>6. THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY VIOLATIONS, CAL. CIV. CODE §§ 1792, 1791.1, ET SEQ.; AND<br>7. VIOLATION OF MAGNUSON-MOSS WARRANTY ACT 25 U.S.C §§ 2301, *et seq.*<br>8. VIOLATION OF CAL. CIV CODE §§ 1750 *et seq.*<br>9. VIOLATION OF CAL. BUS. & PROF. CODE § 17500 *et seq.* |

-1-

All allegations in this Complaint are based upon information and belief except for those allegations which pertain to Plaintiff and Plaintiff's counsel. Each allegation has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

Plaintiff Jamie Lipeles, for himself and on behalf of all others similarly situated, hereby brings this Complaint and alleges as follows against FCA US LLC ("FCA US" or "Defendant"), and DOES 1 through 100, inclusive, and each of them:

## JURISDICTION AND VENUE

1.    Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and Defendant FCA US are citizens of different states and satisfy the diversity requirement, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

2.    Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. §                                                1331 because Plaintiff's Magnuson-Moss Warranty Act claim arises under federal law, and this Court has supplemental subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.    This Court has personal jurisdiction over FCA US because FCA US conducts substantial business in this District and some of the actions giving rise to this action took place in this District and/or caused injury to property in this state; and products, materials, or things processed, serviced, or manufactured by FCA US anywhere were used or consumed in this state in the ordinary course of commerce, trade, or use.

4.    Upon information and belief, FCA US is the North American arm of Stellantis, the world's fourth largest manufacturer and seller of automotive vehicles.

5.    Upon information and belief Ford Chrysler Automobiles N.V. (FCA) and PSA Group merged effective January 2021 and became Stellantis. Defendants have, at all relevant times, conducted and continue to conduct business in California,

and every other state in the country.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, FCA US has caused harm to Plaintiff and other Class members in this District, and FCA US is a resident of this District under 28 U.S.C. § 1391(c)(2) because it is subject to personal jurisdiction in this District. Also, venue is proper in this district pursuant to 18 U.S.C. § 1965.

## PARTIES

7.     Plaintiff Jamie Lipeles is and, at all times relevant to the matters alleged herein, has been over the age of 18 and a resident of Los Angeles County, California. Plaintiff is a citizen of California.

8.     Plaintiff leased a 2018 Chrysler Pacifica Hybrid Minivan. Plaintiff's Pacifica Hybrid Minivan has a defective 12-volt isolator post.

9.     The 12-volt isolator post defect creates the risk of fire with the vehicle on or off.

10.     Plaintiff leased his Class Vehicle with the 12-volt isolator post defect as part of a transaction in which Defendant did not disclose material facts related to the essential purpose – safe transportation. Because of the 12-volt isolator post defect, Plaintiff did not receive the benefit of his bargain. Plaintiff leased a vehicle that is of an inferior standard, grade, and quality than represented. Plaintiff's leased vehicle does not meet ordinary and reasonable consumer expectations regarding safety and reliability.

11.     Upon information and belief, Defendant FCA US, is and at all times herein relevant, a Delaware limited liability company, licensed to do business and doing business in the State of California, including Los Angeles County.

12.     Defendant FCA US has its primary address at 1000 Chrysler Drive, Auburn Hills, Michigan, 48326. The managing Member of FCA US is FCA North America Holdings LLC, which is organized under the laws of the state of Delaware

and has its primary address at 1000 Chrysler Drive, Auburn Hills, MI 48326.

13.    Plaintiffs further allege that DOES 1 through 100, and each of them, are individuals, corporations, partnerships, limited liability companies, limited partnerships, associations, trusts, parent companies and/or subsidiaries who together with the aforementioned other defendants are individuals or entities duly authorized to do and doing business in California.

14.    The true names and capacities, whether individual, corporate, associates, agents or otherwise of defendants, DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names, and they will ask leave of this Court to amend this Complaint when the identities of such individuals have been ascertained. Plaintiffs are informed and believe and thereupon allege that each of the defendants designated herein as a DOE is responsible in some manner and liable herein by reason of negligence, malfeasance, nonfeasance, wanton and reckless misconduct, and conscious disregard, and said defendants directly, legally and proximately caused the injuries and damages asserted in this Complaint by such wrongful conduct.

15.    The acts, conduct, and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate or business defendant, were authorized, ordered, and directed by the respective defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized, and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of the aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers, directors and/or managing agents respectively ratified, accepted the benefits of, condoned and approved of each and all of said acts, conduct or nonfeasance of their co-employees, employers, and agents.

SECOND AMENDED **COMPLAINT**

16.    In addition, at all times herein relevant, each defendant, whether named herein or designated as a DOE, was a principal, master, employer and joint venturer of every other defendant, and every defendant was acting within the scope of said agency authority, employment and joint venture.

## CLASS ALLEGATIONS

### A.    The Definition of The Class

17.    The Class ("the Class") shall consist of the following Subclasses:

a.    All persons throughout the United States and its territories who owned or purchased a 2017 through 2020 Chrysler Pacifica minivan, and which was subject to the W46 recall.

b.    All persons throughout the United States and its territories who leased a 2017 through 2020 Chrysler Pacifica minivan, and whose vehicle was subject to the W46 recall.

c.    All persons throughout California who owned, purchased, or leased a 2017 through 2020 Chrysler Pacifica minivan, and which was subject to the W46 recall. This subclass shall be referred to as the "California Class."

### B.    Maintenance of the Action

18.    Plaintiff brings this action individually and on behalf of himself and as representative of all similarly situated persons under Bus. & Prof. Code §§ 17203 and 17204, California Code of Civil Procedure § 382, and Federal Rules of Civil Procedure, Rule 23.

19.    Plaintiff also alleges that complete diversity of citizenship between the parties exists such that this action falls under 28 U.S.C. § 1332.

### C.    The Class Requisites

20.    At all material times, Plaintiff was a member of the Class and each subclass.

21.    The Class action meets the statutory prerequisites for maintaining a class action under *Code of Civ. Proc.* § 382 and Federal Rules of Civil Procedure, Rule 23, in that:

(a)     The persons who comprise the Class are so numerous that the joinder of all those persons is impracticable and the disposition of their claims as a Class will benefit the parties and the Court;

(b)     Nearly all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the Class and subclass and they will apply uniformly to every Class member;

(c)     Representative Plaintiff's claims are typical of the claims of each Class or subclass member. Plaintiff, like all Class members, has sustained damages arising from Defendants' violations of Federal and State laws. Plaintiff, and the Class members, were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic and pervasive pattern of misconduct engaged in by the Defendants;

(d)     The representative Plaintiff has represented and protected and will continue to represent and protect the interests of the Class fairly and adequately and he has retained counsel who are competent and experienced in class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the Class members that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

22.     The Court should permit the action to be maintained as a class action under Code of Civ. Proc. §382, and Federal Rules of Civil Procedure, Rule 23, because:

(a)     The questions of law and fact common to the Class predominate over any question affecting only individual members:

(b)     A class action is superior to any other available method for fairly and efficiently adjudicating the claims of the Class;

(c)     The Class members are so numerous that it is impractical to bring all of them before the Court;

(d)     Plaintiff and other Class members will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

(e)    There is a community of interest in obtaining appropriate legal and equitable relief for the statutory violations, and in obtaining adequate compensation for the damages and injuries for which Defendants are responsible in an amount sufficient to adequately compensate the Subclass members;

(f)    Without Class certification, the prosecution of separate actions by individual Class members would create a risk of:

    i.    Inconsistent or varying adjudications for individual members that would establish incompatible standards of conduct for Defendants; and/or,

    ii.    Adjudication for individual members that would, as a practical matter, dispose of other non-party members' interests, or that would substantially impair or impede the non-parties' ability to protect their interests, by, for example, potentially exhausting the funds available from Defendants, and

(g)    Defendants have acted or refused to act on grounds generally applicable to the Class, making final injunctive relief appropriate for the Class, as a whole.

23.    Plaintiff contemplates eventually issuing notice to the proposed Class Members that would set forth the subject and nature of the action. Defendants' own business records may be utilized for assisting to prepare and issue the contemplated notice. To the extent that any further notices may be required, Plaintiff would contemplate using additional media and/or mailing.

## **GENERAL ASSERTIONS**

24.    Plaintiffs incorporate here by reference all of the foregoing paragraphs of this Complaint and repeat all assertions and allegations of said paragraphs as though set forth here in full.

25.    Defendant FCA US is a subsidiary of Stellantis, a multinational corporation with hundreds of thousands of employees worldwide. Stellantis was

created after the merger of Fiat Chrysler Automobiles N.V. and PSA Group in January 2021.

26.     The Chrysler Pacifica is one of Defendant's most popular U.S. offerings.

27.     Due to a manufacturing and/or design defect, the 12-volt isolator post experienced a high resistance electrical connection, which could lead to prolonged heating and a potential vehicle fire with the vehicle on or off.

28.     The 12-Volt Isolator Post and/or Component Defect creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or bodily injury to Plaintiff, the Class and others.

29.     On or about July 30, 2020, Defendants issued a recall for 2017-2020 Pacifica Plug-in Hybrid Electric Vehicles.

30.     Plaintiff received a recall notice regarding the 12-volt isolator post experiencing a high resistance electrical connection that could lead to prolonged heating and a potential vehicle fire via email on July 8, 2020.

31.     Plaintiff called Scott Robinson Chrysler in Torrance within 15-30 days after notification of the 12-volt isolator post safety recall.

32.     Plaintiff leased his vehicle from J Star Chrysler Dodge Jeep Ram of Anaheim Hills. Because he used the Class vehicle primarily to transport his small children, he became very concerned when he received notice that there was a recall, that if not fixed could cause the vehicle to catch fire. He called Scott Robinson Chrysler in Torrance to make an appointment for the recall repair. He was told that no parts were available. When he asked when parts would be available, he was told they did not know and that they would contact Plaintiff when the parts became available.

33.     Plaintiff was forced to purchase a third vehicle for use by his household because of the defect in his Class Vehicle rendered the vehicle unsafe.

34.     Since the recall, Plaintiff has only used his Class Vehicle sporadically

because he fears the vehicle will catch on fire or malfunction due to the defect.

35.     Defendants estimated that over 23,000 vehicles were affected by the defect. The number for the recall was W46. Because of the serious nature of the defect – the vehicles were at risk of catching fire, even when not in use – it was imperative that the owners and lessees remedy the defect as soon as possible and that they should not use the vehicle until the defect was remedied.

36.     On information and belief, Defendants were aware of the problem and the need for a recall. On information and belief, Defendants knew or should have known that due to the dangers presented, the subject vehicles would not be safe for use and that the defect would need to be fixed as soon as possible if the consumer was to be able to use the vehicle.

37.     Nonetheless, Defendants failed to provide sufficient replacement/repair parts to correct the defect. When vehicle owners or lessees contacted or inquired of the dealer or repair location, they were told that the necessary replacement parts were not available. Consequently, the vehicle purchasers and lessees were unable to use their vehicles.

## **FIRST CAUSE OF ACTION**
## **NEGLIGENCE – AGAINST ALL DEFENDANTS**

38.     Plaintiffs incorporate here by reference all of the foregoing paragraphs of this Complaint and repeat all assertions and allegations of said paragraphs as though set forth here in full.

39.     Defendants marketed, distributed and sold the vehicles that were subject to recall number W46.

40.     At all times relevant herein, Defendants were and are engaged in the business of including, but not limited to selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting,

vending, installing, handling, labeling, promoting, advertising, furnishing, retailing, analyzing, inspecting, supplying and placing into the stream of commerce, certain products and their component parts, packaging, attachments, associated warnings and constituents thereof, or lack of the same, the vehicles that were the subject of recall number W46.

41.    Plaintiffs are informed and believe, and thereupon allege that Defendants failed to provide to its dealers, repair shops, and any all other entities that were expected or anticipated to perform the necessary repairs to the recalled vehicles with sufficient repair parts, replacement parts, or both, such that the vehicle owners could have their vehicles returned to a safe and usable condition as soon as possible.

42.    Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, had a legal duty to manage and operate their business and their manufacturing, distribution, and retail operations adequately and properly; to train and supervise their employees and agents, including their designers, inspectors, quality control agents and other manufacturing, testing, distribution and delivery personnel adequately and properly; and to act without negligence, conscious disregard or other wrongful conduct.

43.    Defendants, including its employees, agents, directors, officers, stockholders, partners and associates, failed to manage and operate their business and their design, manufacturing and distribution centers adequately and properly; failed to train and supervise their employees and agents, including designers, inspectors, quality control agents and other manufacturing, distribution and delivery personnel adequately and properly; failed to act without negligence, conscious disregard or other wrongful conduct in that, among other things to be discovered, said defendants failed to properly conduct themselves, adequately interact and coordinate business matters with others; and failed to train and supervise their employees and agents regarding employment duties adequately and properly, and

the design, test manufacture, inspection, delivery, demonstration and advertising of their merchandise, including, but not limited to the vehicles that were subject to recall W46, and other related business matters.

44.    Defendants' failures, including the Defendant designers, manufacturers, distributors and retailers, constituted a breach of the aforementioned duties that in a foreseeable manner, legally and proximately caused the loss of use and other damage to Plaintiffs herein asserted.

45.    In addition, Defendants negligently and carelessly sold, designed, manufactured, fabricated, distributed, retailed, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, bought, leased, rented, vended, installed, handled, labeled, compounded, promoted, furnished, analyzed, inspected, supplied, and place into the stream of commerce, the recalled vehicles. including, but not limited to, the component parts, ingredients, packaging, attachments, associated warnings, and constituents thereof, and lack of the same. This negligence included, but was not limited to, failing to provide sufficient repair parts, replacement parts, or both, to its dealerships, repair shops, etc. such that the recalled vehicles could be made safe and usable within a reasonable amount of time.

46.    Plaintiffs are informed and believe and thereupon allege that in conducting their business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the recalled vehicles, including its employees, agents, directors, officers, stockholders, partners and associates, either lacked or failed to use the knowledge and skill ordinarily possessed

by similarly-situated persons, companies, designers, manufacturers, testers, assemblers, inspectors, distributors, retailers and suppliers of such products.

47.    In conducting its business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the recalled vehicles, Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, had prior knowledge of the defective and dangerous condition that lead to recall number W46, and failed to ensure that there was sufficient repair parts, replacement parts, or both, such that the affected vehicles could be returned to a safe and usable condition in a timely manner.

48.    Defendants' failure to ensure that there were sufficient repair parts, replacement parts, or both, such that the affected vehicles could be returned to a safe and usable condition in a timely manner, resulted in Plaintiff and the class members losing the use of their vehicles for an extended and unreasonable period of time, resulting in damage.

49.    Defendants' acts, omissions, despicable conduct, malfeasance were done in conscious disregard of the rights and safety of others.

50.    Defendants' conscious disregard and despicable conduct directly, legally and proximately caused injury to plaintiff and to the class as herein described.

51.    In addition, the acts, omissions, negligence, malfeasance, nonfeasance, despicable conduct, and conscious disregard as described above, the conduct was done by Defendants' employees with the advance knowledge, authorization, approval, participation or ratification of Defendants' officers, directors and/or managing agents.

52.    As a direct, legal and proximate result of Defendants' combined and

concurrent wrongful conduct, Plaintiff and the class suffered and sustained loss and damages. This loss and damages include, but is not limited to the following:

(a)    Economic loss, in an amount to be established at the time of trial according to proof;

(b)    Loss or damage to tangible personal property, in an amount to be established at the time of trial according to proof; and

(c)    Pre-trial interest, in an amount to be established at the time of trial according to proof.

53.    At all times alleged herein, the conduct of the defendants, and each of them, was so reckless and willful, and committed with the disregard of the well-being of Plaintiffs, that said conduct amounted to fraud, malice and/or oppression warranting a claim for punitive or exemplary damages in an amount as the Court deems just and reasonable and sufficient to punish defendants, and each of them, and set an example for others.

## SECOND CAUSE OF ACTION

## STRICT LIABILITY – AGAINST ALL DEFENDANTS

54.    Plaintiffs incorporate herein by reference all of the preceding paragraphs of this Complaint and repeat and reallege such paragraphs here as though set forth in full.

55.    Defendants marketed, distributed and sold the vehicles that were subject to recall number W46.

56.    At all times relevant herein, Defendants were and are engaged in the business of including, but not limited to selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, retailing, analyzing, inspecting, supplying and placing into the stream of commerce, certain

SECOND AMENDED **COMPLAINT**

products and their component parts, packaging, attachments, associated warnings and constituents thereof, or lack of the same, the vehicles that were the subject of recall number W46.

57.    Plaintiffs are informed and believe, and thereupon allege that Defendants failed to provide to its dealers, repair shops, and any all other entities that were expected or anticipated to perform the necessary repairs to the recalled vehicles with sufficient repair parts, replacement parts, or both, such that the vehicle owners could have their vehicles returned to a safe and usable condition as soon as possible.

58.    Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, had a legal duty to manage and operate their business and their manufacturing, distribution, and retail operations adequately and properly; to train and supervise their employees and agents, including their designers, inspectors, quality control agents and other manufacturing, testing, distribution and delivery personnel adequately and properly; and to act without negligence, conscious disregard or other wrongful conduct.

59.    Defendants, including its employees, agents, directors, officers, stockholders, partners and associates, failed to manage and operate their business and their design, manufacturing and distribution centers adequately and properly; failed to train and supervise their employees and agents, including designers, inspectors, quality control agents and other manufacturing, distribution and delivery personnel adequately and properly; failed to act without negligence, conscious disregard or other wrongful conduct in that, among other things to be discovered, said defendants failed to properly conduct themselves, adequately interact and coordinate business matters with others; and failed to train and supervise their employees and agents regarding employment duties adequately and properly, and the design, test manufacture, inspection, delivery, demonstration and advertising of their merchandise, including, but not limited to the vehicles that were subject to

recall number W46, and other related business matters.

60.    Defendants' failures, including the Defendant designers, manufacturers, distributors and retailers, constituted a breach of the aforementioned duties that in a foreseeable manner, legally and proximately caused the loss of use and other damage to Plaintiffs herein asserted.

61.    In addition, Defendants negligently and carelessly sold, designed, manufactured, fabricated, distributed, retailed, wholesaled, recommended, tested, modified, controlled, advertised, created, processed, prepared, constructed, packaged, utilized, provided, warranted, repaired, maintained, marketed, bought, leased, rented, vended, installed, handled, labeled, compounded, promoted, furnished, analyzed, inspected, supplied, and place into the stream of commerce, the recalled vehicles. including, but not limited to, the component parts, ingredients, packaging, attachments, associated warnings, and constituents thereof, and lack of the same. This negligence included, but was not limited to, failing to provide sufficient repair parts, replacement parts, or both, to its dealerships, repair shops, etc. such that the recalled vehicles could be made safe and usable within a reasonable amount of time.

62.    Plaintiffs are informed and believe and thereupon allege that in conducting their business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the recalled vehicles, including its employees, agents, directors, officers, stockholders, partners and associates, either lacked or failed to use the knowledge and skill ordinarily possessed by similarly-situated persons, companies, designers, manufacturers, testers, assemblers, inspectors, distributors, retailers and suppliers of such products.

SECOND AMENDED **COMPLAINT**

63.     In conducting its business, and in selling, designing, manufacturing, fabricating, distributing, retailing, wholesaling, recommending, testing, modifying, controlling, advertising, creating, processing, preparing, constructing, packaging, utilizing, providing, warranting, repairing, maintaining, marketing, leasing, renting, vending, installing, handling, labeling, promoting, advertising, furnishing, analyzing, inspecting, supplying, and placing into the stream of commerce the recalled vehicles, Defendants, including their employees, agents, directors, officers, stockholders, partners and associates, had prior knowledge of the defective and dangerous condition that lead to recall number W46, and failed to ensure that there was sufficient repair parts, replacement parts, or both, such that the affected vehicles could be returned to a safe and usable condition in a timely manner.

64.     Defendants' failure to ensure that there were sufficient repair parts, replacement parts, or both, such that the affected vehicles could be returned to a safe and usable condition in a timely manner, resulted in Plaintiff and the class members losing the use of their vehicles for an extended and unreasonable period of time, resulting in damage.

65.     Defendants' acts, omissions, despicable conduct, malfeasance were done in conscious disregard of the rights and safety of others.

66.     Defendants' conscious disregard and despicable conduct directly, legally and proximately caused injury to plaintiff and to the class as herein described.

67.     In addition, the acts, omissions, negligence, malfeasance, nonfeasance, despicable conduct, and conscious disregard as described above, the conduct was done by Defendants' employees with the advance knowledge, authorization, approval, participation or ratification of Defendants' officers, directors and/or managing agents.

68.     As a direct, legal and proximate result of Defendants' combined and concurrent wrongful conduct, Plaintiff and the class suffered and sustained loss and damages. This loss and damages include, but is not limited to the following:

(d)     Economic loss, in an amount to be established at the time of trial according to proof;

(e)     Loss or damage to tangible personal property, in an amount to be established at the time of trial according to proof; and

(f)     Pre-trial interest, in an amount to be established at the time of trial according to proof.

69.     At all times alleged herein, the conduct of the defendants, and each of them, was so reckless and willful, and committed with the disregard of the well-being of Plaintiffs, that said conduct amounted to fraud, malice and/or oppression warranting a claim for punitive or exemplary damages in an amount as the Court deems just and reasonable and sufficient to punish defendants, and each of them, and set an example for others.

## THIRD CAUSE OF ACTION

## BREACH OF EXPRESS WARRANTY – AGAINST ALL DEFENDANTS

70.     Plaintiffs incorporate herein by reference all of the preceding paragraphs of this Complaint and repeat and reallege such paragraphs here as though set forth in full.

71.     Defendants were engaged in the business of selling and/or supplying the above-described vehicles in their regular course of business.

72.     At all times herein mentioned, Defendants expressly affirmed, promised and warranted to Plaintiff and to the class and the general consuming public, through print, media and television advertising and other express means, that the subject vehicles were of merchantable quality and were safe for its ordinary, intended, foreseeable and expected use, and such affirmation, promise and warranty was a basis of the bargain with respect to the sale of the vehicles.

73.     In addition, Defendants expressly affirmed, promised and warranted that in the event of a recall such as recall number W46, the would supply sufficient repair parts, replacements parts, or both, to their dealerships, repair shops, and any

other entity that they reasonably expected, anticipated, or both, that would perform the repair work such that the repairs could be performed in a reasonable amount of time such that the vehicle owners' loss of use would be minimized and would last no longer than was reasonable and necessary.

74.    Due to Defendants' actions/inactions, the vehicles were not of merchantable quality and were not as warranted, thus constituting a breach of warranty; and as a direct, legal and proximate result of Plaintiff's and the classes' reliance on the warranties and the breach of warranties, Plaintiff and the class sustained the herein-described losses and damages.

75.    Plaintiffs are informed and believe and thereupon assert that Defendants received timely notice of breach of warranties.

76.    Plaintiffs are informed and believe and thereupon assert that Defendants knew or, in the exercise of reasonable care, should have known of the lack of sufficient parts being supplied such that the repairs could be made in a reasonable amount of time.

77.    As a direct, legal and proximate result of these breach of warranties and the defective nature of the vehicle, Plaintiffs suffered and sustained loss and damages including, but not limited to loss of use of the vehicle.

78.    As a further result of the said breach of warranties Plaintiffs incurred and will continue to incur loss or damage to tangible personal property, in an amount to be established at the time of trial according to proof, as well as interest in an amount to be established at the time of trial according to proof.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY – AGAINST ALL DEFENDANTS

79.    Plaintiffs incorporate herein by reference all of the preceding paragraphs of this Complaint and repeat and reallege such paragraphs here as though set forth in full.

80.    Defendants impliedly warranted to purchasers and users of the vehicles

and the general public, including Plaintiff   and the class, that they were suitable for their intended use, was of merchantable quality, fit for the ordinary purposes for which such goods are used, ran within the variations permitted by the agreement, and that in the event of a recall such as W46, that sufficient replacement parts and repair parts would be provided to dealerships, repair shops, etc. such that the repairs could be completed in a timely manner.

81.    Plaintiff's and the classes' vehicles were not of merchantable quality and were not as warranted by Defendants, and Defendants failed to provide sufficient repair parts and replacement parts such that repairs could be completed in a timely manner, thus constituting a breach of said warranties and, as a direct, legal, and proximate cause of the reliance on these warranties by Plaintiff and the class and the breach of these warranties, Plaintiffs suffered the herein described losses and other damages.

82.    Plaintiffs are informed and believe and thereupon assert that Defendants knew, or in the exercise of reasonable care, should have known of the parts shortage.

83.    As a direct, legal and proximate result of the breach of warranties and defective nature of the vehicles, Plaintiffs suffered and sustained loss and damages.

84.    As a further result of said breach of warranties and defective nature of the vehicles, Plaintiffs incurred and will continue to incur loss or damage to tangible personal property, in an amount to be established at the time of trial according to proof, as well as interest in an amount to be established at the time of trial according to proof.

## FIFTH CAUSE OF ACTION

## UNFAIR COMPETITION (*Business & Professions Code §§ 17200 et seq.*) – AGAINST ALL DEFENDANTS

85.    Plaintiffs incorporate herein by reference all of the preceding paragraphs of this Complaint and repeat and reallege such paragraphs here as though set forth in full.

86.     Each Defendant is also a "person" as that term is defined in *Business & Professions Code* §17021.

87.     The *Business & Professions Code* defines unfair competition as any unlawful, unfair, or fraudulent business practice. At all times relevant herein, by and through the conduct described herein, Defendants have engaged in unfair and unlawful practices by failing to provide sufficient repair parts, replacement parts, or both, to its dealerships, repair shops, etc. such that the vehicles subject to recall number W46 would be repaired in a reasonable and timely manner, all in violation of *Business & Professions Code* §§ 17200 *et seq.*

88.     By and through the unfair and unlawful business practices described herein, Defendants have obtained valuable property, money and services from the Plaintiff and the Class and have deprived them of valuable rights and benefits guaranteed by law all to the detriment of Plaintiff and the Class.

89.     All the acts described herein are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, and unscrupulous, and thereby constitute unfair and unlawful business practices in violation of *Business & Professions Code* §§ 17200 *et seq.*

90.     Plaintiff and the Class are entitled to, and do, seek such relief as may be necessary to restore to them the money and property which Defendants have acquired, or of which Plaintiff and the Class have been deprived by means of the above described unfair and unlawful business practices.

91.     Plaintiff and the Class are further entitled to, and do, seek a declaration that the above-described business practices are unfair and unlawful, and that injunctive relief should be issued restraining Defendants from engaging in any of the above described unfair and unlawful business practices in the future.

92.     Plaintiff and the Class have no plain, speedy, and/or adequate remedy at law to redress the injuries which they have suffered as a consequence of the unfair and unlawful business practices of Defendants. As a result of the unfair and unlawful business practices described above, Plaintiff and the Class have suffered and will continue to suffer irreparable harm unless Defendants are restrained from continuing

to engage in these unfair and unlawful business practices. In addition, Defendants should be required to disgorge the unpaid moneys to Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**

**VIOLATIONS OF THE SONG-BEVERLY ACT CALIFORNIA CIVIL CODE §§ 1792, 1791.1, et seq. – BY THE CALIFORNIA CLASS AGAINST ALL DEFENDANTS**

93.    Plaintiffs incorporate herein by reference all of the preceding paragraphs of this Complaint and repeat and reallege such paragraphs here as though set forth in full as though fully set forth herein.

94.    Plaintiff brings this claim on behalf of himself and the California Class.

95.    At all times relevant hereto, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the subject vehicles. Defendants knew or should have known of the ordinary and intended purpose for which the vehicles are purchased.

96.    Defendants impliedly warranted to Plaintiff and the Class that the vehicles, and any components thereof, are merchantable and fit for their ordinary and intended purpose: providing safe and reliable transportation.

97.    Defendants impliedly warranted that vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that in the event that a defect was found, that there would be sufficient repair/replacement parts such that the purchasers and lessees would be able to remedy the defect quickly and without unnecessary or extended loss of use of their vehicles.

98.    Defendants knew or should have known, that the vehicles constituted a safety hazard as described above. Contrary to the applicable implied warranties, however, Defendants failed to provide sufficient repair/replacement parts.

99.    Defendants breached the implied warranties applicable to the vehicles at the time of sale, or at a minimum, at the time of the recall.

100.    Through the actions complained of herein, Defendants breached their implied warranty that the vehicles were of merchantable quality and fit for such use

in violation of California law.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE MAGNUSON-MOSS WARRANT ACT**

**15 U.S.C. §§ 2301, et seq.**

**(Individually and on Behalf of the National Class)**

101.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

102.   Plaintiff brings this Count individually and on behalf of the other members of the National Class.

103.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

104.   Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

105.   Defendants are a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

106.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

107.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warranty to comply with a written warranty.

108.   It its express written warranties, Defendant expressly warranted that it would repair or replace defects in material, workmanship, or factory preparation free of charge if those defects become apparent during the warranty period.

109.   Defendants' warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranty of merchantability is covered by 15 U.S.C. § 2301(7).

110.   With respect to Class members' purchases or leases of the Class Vehicles, the terms of Defendants' written warranties and implied warranty became part of the basis of the bargain between FCA US and other Class members.

111.    Defendants breached the implied warranty of merchantability. Without limitation, the Class Vehicles have a 12-volt isolator post that may experience a high resistance electrical connection that can lead to prolonged heating and a potential vehicle fire with the vehicle on or off, which rends the Class Vehicles unmerchantable.

112.    Defendants breached its express warranties by not offering a functioning repair and not having parts to make repairs.

113.    Defendants also breached its express warranties because it only agreed to replace parts if they see corrosion or other signs of a poor connection that is visibly unsafe. The fundamental safety defect in the vehicles remain.

114.    Defendants also breached its express warranties by essentially making the vehicles unsafe to operate while owners await repairs. FCA US advised Class members "It is advised to exercise the following precautions until the vehicle has the final repair completed: do not park these vehicles inside of buildings or structures and avoid parking near other vehicles. In addition, keep liquids out of the backseat area, including but not limited to beverages, wet items, umbrellas, or bottled liquids that may leak."

115.    At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the 12-volt isolator post defect.

116.    The amount in controversy of Plaintiff's individual claim exceeds the sum of $25. The amount in controversy in this action exceeds the sum of $50,000, exclusive of costs and interest, computed on the basis of all claims to be determined in this lawsuit.

117.    Plaintiff, individually and on behalf of the Class members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

# EIGHTH CAUSE OF ACTION

## VIOLATION OF CONSUMER LEGAL REMEDIES ACT

### Cal. Civ. Code §§ 1750, *et seq.*

### (Individually and on Behalf of the California Class)

118.  Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

119.  Plaintiff brings this cause of action on behalf of himself and on behalf of the California Class.

120.  Defendants are "persons" as defined by the California Civil Code § 1761(c).

121.  Plaintiff and the California Class members are "consumers" within the meaning of California Civil Code § 1761(d) because the purchased the Class Products for personal, family, or household use.

122.  The sale of the Class Products to Plaintiff and the putative Class members is a "transaction" as defined by California Civil Code § 1761(e).

123.  Defendants' acts and practices, which were intended to result, and which did result, in the sale of the Class Products, violate § 1770 of the Consumer Legal Remedies Act for at least the following reasons:

124.  Defendants represented that the Class Vehicles have characteristics, uses or benefits which they do not have;

125.  Defendants advertised their goods with intent to not sell them as advertised;

126.  Defendants represented that their products are of a particular standard, quality, or grade when they are not; and

127.  Defendants represented that their goods have been supplied in accordance with a previous representation when they have not.

128.  By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiff and the prospective class members, Defendant violated

California Civil Code § 1761(a), as it represented that the Class Vehicles had characteristics and benefits that they do not have and represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

129.  Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk to the public.

130.  Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, and were not suitable for their intended use. This Defect was found in each of the Class Vehicles at purchase or lease but may not have been discovered by putative class members until months, or years, after the purchase. Defendants knew, or should have known, well in advance of the recall notice that the Class Vehicles contained a defect the presents a substantial danger of bodily injury or death.

131.  As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and /or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the defect, Plaintiff and the class members were harmed and suffered actual damages in that the Class Vehicles are substantially certain to fail before their expected useful life has run.

132.  Defendants were under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles because Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicle and Plaintiff and the class members could not reasonably have been expected to learn or discover that their Class vehicles had a dangerous safety defect until it manifested.

133.   In failing to disclose the defective nature of the Class Vehicles prior to June 2020, Defendants knowingly and intentionally concealed material facts and breached its duty not to do so.

134.   A reasonable consumer would have considered the facts Defendants concealed or did not disclose to Plaintiff and the Class Members to be important in deciding whether to purchase or lease the Class Vehicles or pay less for them and were material. Had Plaintiff and the class members known of the defective nature of the Class Vehicles, they would not have purchased or leased the vehicles or would have paid less for them.

135.   Plaintiff and the Class Members are reasonable consumers who do not expect their vehicles to catch on fire whether moving or not. This is the reasonable and objective consumer expectation relating to consumer automobiles.

136.   As a result of Defendants' conduct, Plaintiff and the Class Members were harmed and suffered actual damages in that the Class Vehicles experienced and will continue to experience an unreasonable risk of vehicle fires, whether the vehicle is on or off.

137.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and the Class Members suffered and will continue to suffer actual damages. Had Defendants disclosed the true nature and/or danger in its vehicles, Plaintiff and members of the Class would not have been misled into purchasing Defendants' vehicles or would have paid significantly less for them.

138.   Plaintiff, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the State of California, seeks injunctive relief prohibiting Defendants from continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2), and such other equitable relief, including restitution of either (1) the full purchase or lease price paid by customers who purchased a Class Vehicle, or (2) a portion of the purchase or

lease price paid by customers who purchased or leased a Class Vehicle reflecting the difference in value as compared to a vehicle without the defect.

### NINTH CAUSE OF ACTION

### VIOLATION OF FALSE ADVERTISING LAW

### Cal. Bus. & Pro. Code § 17500, *et seq*.

### (Individually and on Behalf of the California Class)

139.   Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

140.   Plaintiff brings this cause of action on behalf of himself and on behalf of the California Class.

141.   FCA US has benefitted from intentionally selling and leasing at an unjust

142.   profit defective Class Vehicles that had artificially inflated prices due to FCA US's concealment of the 12-volt isolator post defect and risk for spontaneous fires in the Class Vehicles, and Plaintiff and the other members of the Class have overpaid for these vehicles.

143.   Defendants publicly disseminated advertising and promotional material that was designed and intended to convey to the public that the Class Vehicles were safe, reliable, and operated as consumers would expect the Class Vehicles to operate.

144.   Defendants were aware, or should have been aware, of the 12-volt isolator post defect and fire risk at the time Plaintiff and members of the Class purchased or leased the Class Vehicles.

145.   Defendants negligently, or intentionally, made representations in their advertisements but, due to issues they were aware of, did not sell vehicles that conformed with the representations and promises in their publicly disseminated advertisements.

146.   FCA US has unjustly received and retained benefits from Plaintiff and the other members of the Class, which is contrary to equity and good conscience.

147.   It is inequitable and unconscionable for FCA US to retain these benefits.

148.   Because FCA US wrongfully concealed its misconduct, Plaintiff and the other members of the Class were not aware of the facts concerning the Class Vehicles and did not benefit from FCA US's misconduct.

149.   FCA US knowingly accepted the unjust benefits of its wrongful conduct.

150.   As a result of FCA US's misconduct, Plaintiff and the other members of the

151.   Class suffered an injury-in-fact and lost money and/or property in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief and judgment as follows:

A.    For an order declaring that this action is properly maintained as a class action and appointing Plaintiff as representative for the Class, and appointing Plaintiff's counsel as Class counsel;

B.    That Defendants bear the costs of any notice sent to the Classes;

C.    For an order awarding Plaintiff and the members of the Classes actual damages, restitution and/or disgorgement;

D.    For an order enjoining Defendants from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

E.    For an order awarding Plaintiff and the members of the Classes pre- and post-judgment interest;

F.    For an order awarding attorneys' fees and costs of suit, including expert's witness fees as permitted by law; and

G.    Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and Class demand a jury trial on all issues triable to a jury.

LIPELES LAW GROUP, APC

Date: May 24, 2021

By:

Kevin A. Lipeles, Esq.
Thomas H. Schelly, Esq.
Attorneys for Plaintiffs